**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ayers v. Sackett*, Slip Opinion No. 2025-Ohio-2115.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2115

THE STATE EX REL. AYERS *v.* SACKETT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ayers v. Sackett*, Slip Opinion No. 2025-Ohio-2115.]**

*Mandamus—Public-records requests—R.C. 149.43—Relator failed to prove by clear and convincing evidence that requested security-footage records exist—Requested retention schedule is a document received and used or followed by public office and therefore subject to disclosure—Writ granted in part and denied in part, statutory damages awarded in amount of $1,000, and relator's request for court costs denied.*

(No. 2024-0715—Submitted February 11, 2025—Decided June 18, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ. KENNEDY, C.J., concurred in judgment only.

FISCHER, J., concurred in part and dissented in part and would not award statutory damages.

**Per Curiam.**

{¶ 1} Relator, Ronald Ayers, petitioned this court for a writ of mandamus compelling respondent, Laura Sackett, the records custodian at the Lake Erie Correctional Institution ("the prison"), to produce public records. He also seeks awards of statutory damages and court costs and has filed two discovery motions. We deny both motions as moot. We grant the writ in part and deny it in part and award Ayers $1,000 in statutory damages. We deny Ayers's request for an award of court costs.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} At all times relevant to this case, Ayers was incarcerated at the prison.[1] According to Sackett, the prison is operated by CoreCivic, which employs Sackett as the warden's secretary at the prison.

{¶ 3} One of Sackett's duties at the prison is to respond to public-records requests made to the prison. On January 4, 2024, Ayers sent Sackett an electronic kite[2] requesting records. He requested, among other things, a paper copy of the Department of Administrative Services' general retention schedule. Sackett responded on February 20, asserting that the schedule "is not specific to the Department of Rehabilitation and Correction." She asked that Ayers "identify what classification of records [he was] seeking" but provided no legal grounds for denying his requests in her response.

---

1. Ayers has since been released from prison.

2. "A kite is a type of written correspondence between an inmate and prison staff." *State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 3.

{¶ 4} On March 1, 2024, Ayers sent Sackett a public-records request for "video surveillance camera footage (and any body-worn camera footage)" from a "shakedown"—a security search of the cell—that occurred on August 31, 2023. Within a week, Sackett responded, telling Ayers that the footage would need to be reviewed by "legal services." She further explained that he would be unable to possess a copy of the footage while in prison but that she could send a copy of the footage to an external address. A CoreCivic employee later claimed that the requested footage was not a public record "pursuant to R.C. 149.43(A)(1)(k) and 149.43(A)(1)(m)."

{¶ 5} Ayers petitioned this court for a writ of mandamus compelling Sackett to produce the requested records. He also seeks an award of $2,000 in statutory damages and an award of court costs.

{¶ 6} We denied Sackett's motion to dismiss and Ayers's motion for consolidation and referral to mediation. 2024-Ohio-3227. We granted an alternative writ, setting a schedule for the submission of evidence and briefs. *Id.*

## II. ANALYSIS

### A. Ayers's motions are moot

{¶ 7} Ayers has submitted two discovery motions. The first asks this court to compel Sackett to respond to Ayers's interrogatories. But before Ayers filed this motion, Sackett provided supplemented responses to Ayers's interrogatories. Sackett argues, and we agree, that her supplemental responses mooted most, if not all, of Ayers's objections that he raised in his motion regarding Sackett's responses to his interrogatories. And because we grant Ayers's petition for a writ of mandamus compelling Sackett to produce a copy of the retention schedule to Ayers, any of Ayers's remaining objections regarding Sackett's responses to his interrogatories are also moot.

{¶ 8} Similarly, Ayers moved for an "order determining the sufficiency of discovery answers," complaining that Sackett's objections in her responses to his

request for admissions were "improper or insufficient" under the Civil Rules. But before Ayers filed this motion, Sackett provided supplemental responses to Ayers's request for admissions. Because of Sackett's supplemental responses, it is unclear whether Ayers's objections to the sufficiency of Sackett's responses remain.

{¶ 9} For these reasons, we deny both discovery motions as moot.

## B. Ayers need not exhaust administrative remedies before filing for mandamus

{¶ 10} The parties first dispute whether Ayers was required to exhaust administrative remedies before he filed his petition for a writ of mandamus. Sackett argues that Ayers cannot petition for a writ until he submits a full grievance and exhausts the administrative remedies under Adm.Code 5120-9-31 (setting forth the inmate grievance procedure). Ayers points out that mandamus is a separate remedy for public-records requests that does not require legal exhaustion either in another court or through administrative procedures.

{¶ 11} Sackett bases her argument on a trio of cases from the Tenth District Court of Appeals: *State ex rel. Moore v. Dept. of Rehab. & Corr.*, 2012-Ohio-1070 (10th Dist.); *State ex rel. Ware v. Bratton*, 2021-Ohio-3157 (10th Dist.); and *State ex rel. Ware v. Rhodes*, 2024-Ohio-1754 (10th Dist.). She claims that in these cases, the Tenth District interpreted the affidavit requirement in R.C. 2969.26(A) as enforceable against public-records requesters when the public-records request (1) deals with institutional programs for inmates and (2) was directed to an employee at a specific prison. Although Sackett recognizes that the affidavit requirement does not apply to a mandamus action brought by an inmate in this court, *see* R.C. 2969.21(B)(2), she insists that the lack-of-an-affidavit requirement does not absolve Ayers of following the grievance procedures before filing his mandamus action.

{¶ 12} This argument misses the mark. Ohio's Public Records Act, R.C. 149.43, does not require a public-records requester to exhaust administrative

4

remedies before filing a mandamus action. The Act requires only that a requester allege that he or she was "aggrieved by the failure of a public office or the person responsible for public records" to follow the requirements of the Act. R.C. 149.43(C)(1). The Act presents two possible remedies to ensure that public offices and persons responsible for public records respond to requests for public records: filing a complaint with the clerk of the court of claims or of a court of common pleas, R.C. 149.43(C)(1)(a), or commencing a mandamus action, R.C. 149.43(C)(1)(b). We have made clear that the availability of an alternative remedy in the ordinary course of law does not foreclose mandamus relief in public-records cases. *See Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 24 (cleaned up) ("Unlike in other mandamus cases, requesters in public records cases need not establish the lack of an adequate remedy in the ordinary course of law.") This principle extends to administrative exhaustion as well since "where there is a judicial remedy that is intended to be separate from the administrative remedy, the requirement of exhaustion of administrative remedies does not apply." *Basic Distrib. Corp. v. Dept. of Taxation*, 2002-Ohio-794, ¶17. Moreover, as Sackett acknowledges, the Tenth District's affidavit requirement does not apply to this court. We therefore reject this initial argument and proceed to the merits of this case.

## C. Though Sackett's response to the request for footage was lawful, her response to the request for the retention schedule was not

**{¶ 13}** The Public Records Act requires public offices and persons responsible for public records to make copies of public records available to any person upon request within a reasonable period. R.C. 149.43(B)(1). When a public office or person responsible fails in this duty, a writ of mandamus is an appropriate remedy to compel compliance with the Act. *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 2006-Ohio-903, ¶ 6; R.C. 149.43(C)(1)(b). To obtain the writ, Ayers must prove by clear and

convincing evidence that he has a clear legal right to the requested relief and that Sackett has a clear legal duty to provide it. *State ex rel. Cincinnati Enquirer v. Sage*, 2015-Ohio-974, ¶ 10.

*1. The footage does not exist*

**{¶ 14}** According to Sackett, the prison qualifies for preservation footage of a search if the search constitutes a "qualifying event," i.e., if the search results in finding "significant contraband." Sackett avers that the requested body-camera footage from August 31, 2023, does not exist, because the events on that date did not constitute a qualifying event. She also asserts that the surveillance cameras record on a continuous loop and that a day's footage is recorded over within 60 to 90 days. Because the August 31 search was not a "qualifying event" for preservation purposes, Sackett avers that the requested surveillance-camera footage had already been recorded over when Ayers requested it.

**{¶ 15}** Mandamus "will not issue when the uncontroverted evidence shows that the requested documents do not exist." *State ex rel. Culgan v. Jefferson Cty. Prosecutor*, 2024-Ohio-4715, ¶ 12. Ayers "bears the burden of proving by clear and convincing evidence that the requested records exist and are maintained by the public office," *id.* at ¶ 13. But if Sackett has withheld the record, she bears the burden to prove the records are exempt from disclosure under R.C. 149.43 or another related statute. *See State ex rel. School Choice Ohio, Inc. v. Cincinnati Pub. School Dist.*, 2016-Ohio-5026, ¶ 11.

**{¶ 16}** If records can still be recovered at the time of the record request, despite being deleted, they must still be produced. *See State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 2008-Ohio-6253, ¶ 28-29, 40 (writ of mandamus granted when the relator presented evidence that emails, though deleted, still existed on the respondent's computers). But if a public office or the person responsible for public records provides unrebutted evidence indicating that records are not recoverable, the records no longer exist and any request for them fails. *See*

*State ex rel. Pool v. Sheffield Lake*, 2023-Ohio-1204, ¶ 14, 18. Absent contrary evidence, an averment from the person responsible for public records asserting that the requested records do not exist is enough to defeat a claim for a writ of mandamus for the requested records. *State ex rel. McDougald v. Greene*, 2020-Ohio-2782, ¶ 9.

**{¶ 17}** Ayers fails to establish by clear and convincing evidence that the footage existed when he made his public-records request. He admits that Sackett "is in a better position to affirmatively show that she complied with her obligation to provide copies of public records." He also does not rebut Sackett's sworn statements that the search did not constitute "a qualifying incident for security video preservation purposes." Rather, Ayers argues only that the prison's policy requires it to preserve footage 45 days or through the duration of a lawsuit. But he requested the August 31, 2023 footage on March 1, 2024, long after the 45-day window had closed. And he has not alleged that a relevant lawsuit had been filed when the window closed.[3]

**{¶ 18}** Because the body-camera footage and the surveillance-camera footage did not exist when Ayers made his public-records request, Sackett correctly denied this request. *See State ex rel. Scott v. Toledo Corr. Inst.*, 2024-Ohio-2694, ¶ 12 (a public officer had no obligation to produce requested body-camera footage when evidence showed it had not been saved and did not exist). Since Ayers has not established that the footage existed when he made his request for it, we deny mandamus relief for the footage.

*2. The retention schedule was a record in the prison's possession*

**{¶ 19}** Ayers asserts that Sackett has clear access to the general retention schedule he requested. He points out that Sackett claimed in her motion to dismiss

---

3. Sackett avers that Ayers requested a different public official preserve the surveillance-camera footage; however, that official is not before this court. In any case, failure to preserve a responsive record is not itself cognizable in mandamus. *See* R.C. 149.351(B).

that the record is available online.  He also argues that the schedule "relates to the efficient operation and management of [the prison]," including its retention policy.

{¶ 20} In response, Sackett insists that the retention schedule is not a record that was created or maintained by the prison, pointing out that it was a different state department's record.  She claims that she has no duty to produce records that were created or maintained by "the central office of the [Department of Rehabilitation and Correction] or by any penal institution" other than her prison.

{¶ 21} A document is a public record if it is "kept by" a public office.  R.C. 149.43(A)(1).  It does not matter whether it was "created[,] *received by*[,] or [otherwise came] under the jurisdiction of" a public office, as long as it "serves to document the . . . policies, decisions, procedures, operations, or other activities of the office."  (Emphasis added.)  R.C. 149.011(G).

{¶ 22} Sackett does not suggest that the prison never received the retention schedule; she just claims that the prison neither created nor maintained it.  R.C. 149.011(G)'s definition of records, however, includes documents that were created or *received* by a public office.  And although we recently explained in *State ex rel. Teagarden v. Igwe* that a prison librarian does not need to produce as public records materials that a prison library receives into its collection, our focus in that case was the fact that the materials in a prison library's collection "do not document the activities of the library."  2024-Ohio-5772, ¶ 19.  In contrast, the record Ayers requested, though created by the Department of Administrative Services, documents the operations of the prison.[4]

{¶ 23} Sackett does not deny that the prison received and used the requested retention schedule, as Ayers has alleged.  Because the uncontroverted evidence

_____

4. The General Assembly has recently amended the Public Records Act to clarify that for the purpose of public-records requests, a state agency "is considered to only be in possession, custody, or control of its own records," 2025 Sub.H.B. No. 265.  As this amendment was not law when Sackett denied Ayers's request for a copy of the retention schedule, we do not opine whether her defense of her denial would succeed under this new amendment.

shows that the prison has received the retention schedule and uses or follows it, it falls under her "jurisdiction," R.C. 149.011(G), and is a public record that Sackett, as the person responsible for the public records at the prison, must produce.

### D. Sackett did not prove an exception from disclosing the retention schedule

**{¶ 24}** Once a public-records requester establishes a clear legal right to have the public office or person responsible for public records produce records, the burden of proof shifts to the custodian of the records to show that the records are exempt from disclosure. *See School Choice Ohio, Inc.*, 2016-Ohio-5026, at ¶ 11. Because the requested footage did not exist when Ayers made his public-records request for it, Sackett need only justify her denial of Ayers's request for the retention schedule.

**{¶ 25}** To do so, Sackett suggests that the request for the retention schedule was overbroad, amounting to a complete reproduction of voluminous files. Whenever a request is ambiguous or overly broad, the records custodian may deny the request but must "provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties." R.C. 149.43(B)(2).

**{¶ 26}** But to support her denial of Ayers's request for the retention schedule, Sackett points out only that the schedule has many subcategories. A request for a single, complex file is not overbroad. Rather, a request is overbroad if it calls for a near-complete duplication of a voluminous file or includes a vast scope of vaguely identified possible records. *See, e.g.*, *State ex rel. Glasgow v. Jones*, 2008-Ohio-4788, ¶ 19 (all emails, text messages, and correspondence during an employee's entire tenure was a near-complete duplication of records and therefore overbroad); *State ex rel. Dillery v. Icsman*, 2001-Ohio-193, ¶ 14 ("any and all records" relating to the relator was not sufficiently clear). Here, Ayers asks for a single, discrete record, though perhaps a multifaceted one. Sackett cites no

authority for the proposition that a request for a single public record may be denied as overbroad. So her defense fails.

{¶ 27} Further, Sackett's response was insufficient to preserve her overbreadth argument. Whenever a records custodian denies a request, the custodian must give an explanation "including legal authority, setting forth why the request was denied." R.C. 149.43(B)(3). Though Sackett claims that she never denied Ayers's request for the retention schedule but instead asked only for clarification, R.C. 149.43(B)(2) makes it clear that requiring a public-records requester to revise or clarify a public-records request amounts to a denial of that request. Yet Sackett provided no legal authority justifying her denial of Ayers's request for the schedule.

{¶ 28} Plus, when a request is overbroad, as Sackett now claims, the records custodian must "inform[] the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties." *Id.* Sackett never informed Ayers how the requested retention schedule was maintained by the prison or accessed at the prison.

{¶ 29} In short, Ayers has established that Sackett incorrectly denied his request for the retention schedule because the request was not overbroad and, even if it were, Sackett's response fell short of what the Public Records Act demands in such instances. We therefore grant Ayers's request for a writ of mandamus ordering Sackett to produce to him a copy of the requested retention schedule.

### E. Ayers can receive statutory damages for one request

{¶ 30} A requester shall be entitled to statutory damages "if a court determines that the public office or the person responsible for public records failed to comply with an obligation" under R.C. 149.43(B), as long as the request for records was made in a manner prescribed by the Public Records Act and made to the public office or person responsible for the requested public records.

R.C. 149.43(C)(2);[5] *State ex rel. Woods v. Lawrence Cty. Sheriff's Office*, 2023-Ohio-1241, ¶ 8. When awarded, statutory damages are set at $100 for each business day "during which the public office or person responsible for the requested public records failed to comply with an obligation" under R.C. 149.43(B), calculated from the day on which the requester filed a mandamus action, with a maximum award of $1,000. R.C. 149.43(C)(2).

{¶ 31} There is no dispute that Ayers's public-records requests were made in a manner prescribed by R.C. 149.43(C)(2). Ayers made two separate requests for two different records—(1) the surveillance-camera and body-camera footage, which evidence shows did not exist when Ayers requested it, and (2) the general retention schedule, the request for which Sackett incorrectly denied as established above.

{¶ 32} Because Sackett did not fail to comply with an obligation by denying Ayers's request for the surveillance-camera and body-camera footage, Ayers is not entitled to statutory damages for that request. But Sackett did fail to comply with her statutory obligations by denying Ayers's request for the retention schedule. Therefore, we award Ayers $1,000 for his request for the retention schedule.

{¶ 33} Ayers also requests an award of court costs. Generally, we grant an award of court costs whenever we grant the writ. *See* R.C. 149.43(C)(3)(a). But Ayers has filed an affidavit of indigency. Because there are no court costs to award, we deny Ayers's request for an award of costs. *See State ex rel. Straughter v. Dept of Rehab. & Corr.*, 2023-Ohio-1543, ¶16.

### III. CONCLUSION

{¶ 34} We deny both of Ayers's discovery motions as moot. And though Sackett correctly denied Ayers's request for footage that does not exist, Ayers has

---

5. The General Assembly amended R.C. 149.43 in 2024 Sub.H.B. No. 265 with an effective date of April 9, 2025. This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023)

shown that the prison received the general retention schedule he requested and that this schedule documents the prison's operations. Therefore, we grant a writ of mandamus ordering Sackett to produce to Ayers a copy of the schedule, but we deny Ayers's request for a writ of mandamus as to the other records he requested. We award Ayers $1,000 in statutory damages and deny his request for an award of court costs.

Writ granted in part
and denied in part.

_____

Ronald Ayers, pro se.

Struck Love Bojanowski & Acedo, P.L.C., and Timothy J. Bojanowski, for respondent.

_____