**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Baker v. Treglia*, Slip Opinion No. 2025-Ohio-2816.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2816

THE STATE EX REL. BAKER *v.* TREGLIA, SHERIFF.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Baker v. Treglia*, Slip Opinion No. 2025-Ohio-2816.]**

*Mandamus—Public-records requests—Requested public records either have been produced, do not exist, or are exempt from disclosure requirement of R.C. 149.43—Records documenting victim's examination by sexual-assault nurse are exempt as medical records under R.C. 149.43(A)(3) from disclosure requirement—Sheriff's two-month delay in producing 42 pages of requested records constitutes a failure to produce those records within reasonable period of time under R.C. 149.43(B)(1)—Public Records Act does not provide for a public-records requester to be reimbursed for charges for copying and shipping records—Writ denied, relator awarded $1,000 in statutory damages, and relator's request for reimbursement for copying and shipping charges denied.*

(No. 2024-0259—Submitted March 11, 2025—Decided August 13, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ. FISCHER, J., concurred in part and dissented in part and would not award statutory damages.

**Per Curiam.**

{¶ 1} In this original action, relator, William H. Baker, an inmate at the Allen-Oakwood Correctional Institution, requests a writ of mandamus against respondent, Allen County Sheriff Matthew Treglia. Baker seeks to compel the sheriff to comply with Baker's public-records request asking for records concerning the investigation that led to his convictions in a criminal case and records concerning a detective involved in the investigation. Baker also asks for statutory damages and reimbursement of his payment of charges for copying and shipping the requested records.

{¶ 2} We denied the sheriff's motion to dismiss, ordered the sheriff to file an answer, and granted an alternative writ, setting a schedule for the submission of evidence and briefs. 2024-Ohio-1507. After reviewing the evidence submitted by the parties, we ordered the sheriff to submit two contested records under seal for in camera review. 2024-Ohio-5572. The sheriff submitted the records under seal, and this case is now ripe for a determination on the merits.

{¶ 3} For the reasons explained below, we deny Baker's request for a writ of mandamus but we award him $1,000 in statutory damages. Additionally, we deny Baker's request for reimbursement of the copying and shipping charges he paid.

## I. FACTS AND PROCEDURAL HISTORY

### A. Public-Records Request and Response

{¶ 4} On November 24, 2023, Baker submitted to the sheriff's office by certified mail a public-records request asking for:

1. Complete Record for Report Number 20173958.
2. Discovery materials for Report Number 20173958.
3. Incident information for Report Number 20173958.
4. Initial Incident Report for Report Number 20173958.
5. All Statements from witnesses, victim, deputies, and Detectives in Report Number 20173958.
6. The Sworn Affidavit of Det. Nate Music of Report Number 20173958.
7. Evaluation and Disciplinary records of Det. Nate Music.
8. Offense and Incident Reports of Det. Nate Music.
9. Disciplinary investigations and action records that involve Det. Nate Music.

(Boldface in original.)

{¶ 5} Both parties acknowledge that Baker mistakenly requested the records relating to report No. 20173958 instead of report No. 201713958—which is the report on the investigation into his criminal conduct. However, the sheriff asserts that his office recognized that Baker was requesting the records of his own criminal case—which involved a rape and gross sexual imposition committed on a minor female—and that it responded accordingly.

{¶ 6} In a letter dated December 12, 2023, the sheriff's office acknowledged receipt of Baker's public-records request and informed him of the copying and

postage costs. The sheriff's office received payment for the costs on January 11, 2024.

{¶ 7} A few days later, the sheriff's office sent Baker over 200 pages of redacted records. According to the evidence Baker has submitted, those records consist of 210 pages of employment and education records regarding Detective Nathan Music. Baker's evidence does not show that any criminal-investigation records were produced in mid-January 2024.

{¶ 8} However, the sheriff asserts that the January production also included the general-offense report resulting from the investigation, a supplemental report, and two witness statements. The evidence that the sheriff submitted shows the inclusion of those records, for a total of 216 pages.

## B. This Mandamus Action

{¶ 9} On February 20, 2024, Baker filed his complaint in this case, alleging that the sheriff had failed to send him some of the records he requested.

{¶ 10} In March 2024, the sheriff's office discovered additional records responsive to Baker's public-records request that it had inadvertently failed to send him. The sheriff's office sent those additional records to Baker on March 6. Those records consist of 42 redacted pages and include what the sheriff's office deemed to be the "[c]omplete record for Report Number 201713958." However, according to the letter sent with the records, the sheriff's office had redacted or entirely withheld pages containing the following information and categories of records pursuant to the following authorities:

1) Personal information (ORC 149.43(A)(1)(dd));
2) County Children Services Agency records (ORC 5153.17);
3) OHLEG [Ohio Law Enforcement Gateway] and CCH [computerized criminal-history] records (ORC 109.57; [former] OAC 4501:2-10-06(C)); and

4) Victim Assault History; SANE [sexual-assault nurse examiner] records (ORC 149.43(A)(1)(v); see also Crim.R. 16(E)(1)).

{¶ 11} In April 2024, we denied the sheriff's motion to dismiss, ordered him to file an answer, and granted the alternative writ. 2024-Ohio-1507.

{¶ 12} In his brief, Baker does not challenge any of the redactions to the records that were produced but he requests that we conduct an in camera review of the records that were entirely withheld. According to the sheriff, he entirely withheld "Children's Services Records," including the requested statement of the victim, and records of an exam conducted on the victim by a sexual-assault nurse examiner ("SANE") because those documents are exempt from disclosure. The sheriff argues that under R.C. 5153.17, the children's-services agency's investigatory records, including the victim statement, are not considered public records. And he contends that the SANE records were designated as "counsel only" at Baker's criminal trial and are therefore exempt under Crim.R. 16(E)(1) (establishing defense counsel's right in sexual-assault cases to inspect certain photographs, results of physical or mental examinations, and hospital reports).

{¶ 13} In November 2024, we ordered the sheriff to file the withheld records under seal for in camera review. 2024-Ohio-5572. The sheriff has submitted the records under seal, and this case is ripe for our decision.

## II. ANALYSIS

### A. Writ of Mandamus

{¶ 14} "[U]pon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). A writ of mandamus "is an appropriate remedy to compel compliance with R.C. 149.43." *State ex rel. Wells v. Lakota Local Schools Bd. of Edn.*, 2024-Ohio-3316, ¶ 11; R.C. 149.43(C)(1)(b). To obtain the writ, "the requester must prove by clear

and convincing evidence a clear legal right to the record and a corresponding clear legal duty on the part of the respondent to provide it." *State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 10. In general, however, when requested records have been provided to the relator after a mandamus action is filed in a public-records case, the mandamus claim becomes moot. *State ex rel. Brinkman v. Toledo City School Dist. Bd. of Edn.*, 2024-Ohio-5063, ¶ 25.

### 1. Baker's request for a writ is partially moot

{¶ 15} The sheriff asserts that he has provided Baker with all existing records responsive to his public-records request other than the records the sheriff withheld as exempt: the children's-services agency's records, including the victim statement, and the SANE records.

{¶ 16} Baker acknowledges that the sheriff has provided records responsive to item Nos. 1 through 6 of his public-records request except for the victim statement requested in No. 5. However, as will be discussed below, Baker's request for the SANE records—which are encompassed by item No. 1 in his public-records request, which asked for the complete record of the investigation—has not been satisfied and, therefore, is not moot.

{¶ 17} Because the parties agree that the sheriff has provided Baker with all records responsive to item Nos. 1 through 6 of his public-records request except for the documents that were withheld as exempt, we conclude that Baker's request for a writ of mandamus is moot as to those records except for the children's-services agency's records and the SANE records. *See Brinkman*, 2024-Ohio-5063, at ¶ 25.

### 2. Baker is not entitled to a writ as to disciplinary records concerning Detective Music

{¶ 18} Baker next claims that the sheriff has violated the Public Records Act by not producing disciplinary records regarding Detective Music, which would be responsive to item Nos. 7 through 9 of Baker's public-records request. Baker emphasizes that he requested Music's disciplinary records, not the certificates and

employment paperwork that were produced. In response, the sheriff alleges that his office produced Music's personnel file in its entirety. According to the sheriff, the reason that no disciplinary or investigative records regarding Music were produced is that no such records exist.

{¶ 19} The relator in an action seeking public records has the "burden to prove, by clear and convincing evidence, that the records that [the relator] requested exist and are public records maintained by the [public] office." *State ex rel. Cordell v. Paden*, 2019-Ohio-1216, ¶ 8. Baker has not submitted any evidence showing that additional records regarding Detective Music, such as disciplinary records or offense or incident records, exist. Therefore, Baker has not shown by clear and convincing evidence that he is entitled to a writ of mandamus as to item Nos. 7 through 9 of his public-records request.

### 3. *Baker is not entitled to a writ as to the victim statement*

{¶ 20} As noted above, Baker concedes that his public-records request has been satisfied as to item No. 5 except as to the victim statement. The sheriff does not assert that the victim statement is not a record of his office; he admits that the victim statement is contained in the office's file for Baker's criminal case. The sheriff argues, however, that the victim statement is exempt from disclosure because it is an investigative record of Allen County Children Services and under R.C. 5153.17, the agency's records are not public records.

{¶ 21} "Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish . . . that the requested records fall squarely within the exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770, paragraph two of the syllabus.

{¶ 22} The version of R.C. 5153.17(A) and (B) in effect at the time of Baker's public-records request provided:

(A) Each public children services agency shall prepare and keep written records of all of the following:

(1) Investigations of families, children, and foster homes;

(2) The care, training, and treatment afforded to children;

(3) Such other records as are required by the department of job and family services.

(B) Records under division (A) of this section shall be confidential, but . . . shall be open to inspection by the following:

(1) The agency, the director of job and family services, and the director of the county department of job and family services, and by other persons upon the written permission of the executive director;

(2) Upon request to an agency and subject to division (C) of this section, an adult who was formerly placed in foster care.

2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

{¶ 23} Records the release of which is prohibited by state law are excluded from the definition of "public record" for purposes of the Public Records Act. R.C. 149.43(A)(1)(v). The applicable version of R.C. 5153.17(B) provided that "[r]ecords under [R.C. 5153.17(A)]" are confidential. Therefore, if the victim statement Baker requested is an investigatory record within the meaning of R.C. 5153.17(A)(1), it is not a public record.

{¶ 24} The sheriff filed the victim statement under seal pursuant to our order. The victim statement is contained within a report written by an intake investigator for the Allen County Children Services Board. The report suggests that the victim made her statement to the intake investigator. It is clear from the report that the report concerns a child and that it is a record of Allen County Children Services; the report is thus encompassed within R.C. 5153.17(A).

Accordingly, the report is confidential under R.C. 5153.17(B), and under R.C. 149.43(A)(1)(v), it is not a public record. Therefore, we deny Baker's request that the sheriff be ordered to produce the victim statement.

*4. Baker is not entitled to a writ as to the SANE records*

{¶ 25} In his brief, Baker argues that he never requested "SANE" records and he asserts that the sheriff is using this label to mislead and distract us from the records actually at issue. However, as the sheriff admits, the SANE records are responsive to item No. 1 in Baker's public-records request: the complete record of the investigation. Upon in camera review pursuant to our November 2024 order, the SANE records document the victim's SANE examination, which was conducted after the rape of which Baker was later convicted. Accordingly, the SANE records are responsive to Baker's public-records request.

{¶ 26} But medical records are not public records within the meaning of the Public Records Act. R.C. 149.43(A)(1)(a). For purposes of the act, a medical record is "any document or combination of documents, except births, deaths, and the fact of admission to or discharge from a hospital, that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient *and* that is generated and maintained in the process of medical treatment." (Emphasis added.) R.C. 149.43(A)(3). "To be excepted from disclosure, medical records 'must meet the conjunctive requirements of the statute.'" *State ex rel. O'Shea & Assocs. Co., L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 2012-Ohio-115, ¶ 42, quoting *State ex rel. Strothers v. Wertheim*, 1997-Ohio-349, ¶ 12.

{¶ 27} The SANE records at issue in this case were created by a nurse to document the victim's sexual-assault examination at the Lima Memorial Health System hospital. Although such an exam may be conducted with prosecution in mind, that does not negate the fact that a nurse was examining the victim for possible medical issues. *See State v. Stahl*, 2006-Ohio-5482, ¶ 39 (although a sexual-assault-examination unit "partly serves a prosecutorial function by

collecting evidence, this function is at best secondary to the . . . unit's primary motivation, the care of its patients"). Therefore, for purposes of R.C. 149.43(A)(1)(a), the SANE records "pertain[] to the medical history, diagnosis, prognosis, or medical condition of a patient" and were "generated . . . in the process of medical treatment."

{¶ 28} The remaining issue is whether the SANE records at issue here were "maintained" in the process of medical treatment. Several courts of appeals have held that a medical record retained its protection from production as a medical record after it was obtained by a public office during an investigation. *See, e.g.*, *State ex rel. Natl. Broadcasting Co. v. Cleveland*, 82 Ohio App.3d 202, 214 (8th Dist. 1992) (holding that emergency-room record depicting patient's medical condition and treatment that was gathered by city during a police use-of-force investigation was a medical record); *Ingraham v. Ribar*, 80 Ohio App.3d 29, 33 (9th Dist. 1992) (holding that medical records in sheriff's possession were exempt from disclosure). We agree. Standing alone, the fact that the SANE records are now in the sheriff's possession does not undermine the fact that they "pertain[] to the medical history, diagnosis, prognosis, or medical condition of a patient" and were "generated . . . in the process of medical treatment." Therefore, the SANE records are exempt as medical records from the Public Records Act's disclosure requirement, and we deny Baker's request that the sheriff be ordered to produce them. R.C. 149.43(A)(1).

### B. Statutory Damages

#### 1. Baker is entitled to statutory damages

{¶ 29} Although Baker's request for a writ of mandamus is moot as to most of the records responsive to item Nos. 1 through 6 of his public-records request, his request for statutory damages for the sheriff's failure to produce those records is not moot. *See State ex rel. Woods v. Lawrence Cty. Sheriff's Office*, 2023-Ohio-1241, ¶ 7. A public-record requester is entitled to statutory damages if (1) he

transmitted a written public-records request by hand delivery, electronic submission, or certified mail, (2) he made the request to the public office or person responsible for the requested records, (3) he fairly described the records sought, and (4) the public office or official failed to comply with an obligation under R.C. 149.43(B).  R.C. 149.43(C)(2).[1]

{¶ 30} In this case, it is uncontested that Baker sent his public-records request to a public office by certified mail.  Although Baker wrote the wrong report number in item Nos. 1 through 6 of the request, the sheriff's office understood from the beginning that Baker was requesting the records concerning his own criminal case.  And the evidence the sheriff submitted shows that the sheriff's office included records from Baker's criminal case among the records it initially produced, in January 2024.  Because the sheriff's office was able to identify the records being requested, Baker sufficiently described the records.  *See* R.C. 149.43(B)(2) (providing that a public office or official may deny a request and provide the requester with an opportunity to revise it if the public office or official cannot reasonably identify what public records are being requested).  Therefore, Baker is entitled to statutory damages if the sheriff failed to comply with any of his obligations under R.C. 149.43(B).

{¶ 31} Baker argues that he is entitled to statutory damages because the sheriff failed to produce some of the requested records until after he filed the mandamus action.  R.C. 149.43(B)(1) requires that "upon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time."

---

1. The General Assembly amended R.C. 149.43 in 2024 Sub.H.B. No. 265 with an effective date of April 9, 2025.  This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

{¶ 32} What constitutes a reasonable period of time "depends upon all of the pertinent facts and circumstances," including the scope of a public-records request, the volume of responsive records, and whether redactions are necessary. *State ex rel. Morgan v. Strickland*, 2009-Ohio-1901, ¶ 10, 12-17. In one case in which a large number of murder-investigation documents needed to be carefully redacted and the public office had provided initial responses to a public-records request, we concluded that two months was a reasonable amount of time. *See State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 2017-Ohio-8988, ¶ 3-5, 59. However, in another case involving a narrow request for only a few records that did not need to be redacted, we concluded that a delay lasting almost three months was unreasonable. *State ex rel. Mobley v. Powers*, 2024-Ohio-3315, ¶ 10-11. In *Mobley*, a significant part of the delay in producing the records was attributable to a public employee's forgetting to send the records after she located them. *Id*. at ¶ 10.

{¶ 33} Here, the sheriff received Baker's public-records request in late November 2023. Although the sheriff originally produced most of the responsive records in mid-January 2024, other records were not produced until March 6, 2024. Excluding the period between when the sheriff informed Baker of the copying and postage costs and when the sheriff received payment for the costs—roughly one month—the sheriff's office is responsible for the remaining delay of more than two months between Baker's request and his receipt of the additional records in March 2024. Although the additional records produced in March 2024 required some redaction, it appears that the main reason those records were not produced in January 2024 along with the rest of the records is that they had been overlooked during the initial records search.

{¶ 34} The sheriff argues that Baker is not entitled to statutory damages, because the failure to produce the additional records until March 2024 was not intentional or malicious but an honest mistake. "However, statutory-damage

awards under the Public Records Act are not contingent on the good or bad faith of the public-records custodian. Rather, under R.C. 149.43(C)(2), statutory damages are mandatory whenever a public-records custodian fails to comply with her obligation." *State ex rel. Ware v. Akron*, 2021-Ohio-624, ¶ 18. We conclude that the sheriff's two-month delay in producing the additional 42 pages of records constitutes a failure to produce those records within a reasonable period of time. Therefore, Baker is entitled to statutory damages.

### 2. Amount of statutory damages

**{¶ 35}** "Statutory damages accrue at the rate of $100 for each business day the office failed to meet one of R.C. 149.43(B)'s obligations, beginning on the day the requester files a mandamus action, up to $1,000." *State ex rel. Horton v. Kilbane*, 2022-Ohio-205, ¶ 15, citing R.C. 149.43(C)(2).

**{¶ 36}** Baker requested "up to $9000" in statutory damages in his complaint, but he does not argue in his brief why he is entitled to that amount. All the records Baker requested were identified in the same letter and concerned the same general subject matter. Accordingly, they count as one public-records request for the purpose of calculating statutory damages. *See Ware* at ¶ 21-22. Baker filed this mandamus action on February 20, 2024, and the sheriff produced the last of the responsive records on March 6, 2024. Eleven business days elapsed during that time. Therefore, Baker is entitled to the maximum $1,000 in statutory damages.

### C. Copying and Shipping Charges

**{¶ 37}** Baker does not request court costs. Rather, he requests that we award him the $19 that he was charged for the costs of copying and mailing the public records. However, Baker has not cited any authority in support of this request, and the Public Records Act does not provide for a public-records requester to be reimbursed for charges for copying and shipping records. Rather, the act explicitly allows public offices to charge a requester in advance "the cost involved in providing the copy of the public the record." R.C. 149.43(B)(6). And Baker

received the 216 pages of records that he paid the $19 for the sheriff to copy and ship.  Therefore, we deny this request.

### III.  CONCLUSION

{¶ 38} As explained above, we deny Baker's request for a writ of mandamus as to item Nos. 7 through 9 of his public-record request because the sheriff provided all records responsive to those items before Baker filed this action. We deny Baker's request for a writ of mandamus as to the SANE records and the victim statement because those records are exempt from disclosure.  And we deny as moot Baker's request for a writ as to the remaining items listed in his public-records request.  We award Baker $1,000 in statutory damages, but we deny his request for reimbursement of his payment of the charges for copying and shipping the records.

Writ denied.

_____

William H. Baker, pro se.

Destiny R. Caldwell, Allen County Prosecuting Attorney, and Kayla M. Rogers, Assistant Prosecuting Attorney, for respondent.

_____